Opinion filed February 26, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed February 26,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00232-CV

                                                    __________

 

                              IN
THE INTEREST OF Z.N.H., A CHILD

 



 

                                         On
Appeal from the 326th District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 29,195-C

 



 

                                                                   O
P I N I O N

Matthew
Neal Hendrix appeals from the trial court=s
April 13, 2007 order granting Brenda Hendrix Smith=s petition to modify the parent-child
relationship.  Matthew and Brenda are representing themselves pro se in this
appeal.[1]  We reverse
and remand.

                                                                    Background








Brenda
and Matthew are the parents of Z.N.H.  Brenda and Matthew divorced on
November 30, 1998.  At that time, Z.N.H. was three years old.  In the
divorce decree, the trial court appointed Brenda as the sole managing
conservator of Z.N.H. and Matthew as the possessory conservator of Z.N.H.  The
decree provided that Brenda had the exclusive right to establish Z.N.H.=s primary residence.

On
June 7, 2001, the trial court entered an agreed order modifying the
parent-child relationship.  The agreed order contained a geographical
limitation provision that required Brenda to establish Z.N.H.=s primary residence in
Taylor County, Texas.  On February 27, 2002, the trial court entered a judgment
nunc pro tunc that included the Taylor County geographical limitation
provision.

            In July 1999, Matthew married
Dawn D. Hendrix.  In May 2000, Brenda married Wayne Smith.  At that time, Wayne
was a professor at Hardin-Simmons University in Abilene, Texas.  In February
2006, Hardin-Simmons denied tenure to Wayne.  Wayne obtained a job with Argosy
University in Dallas, and Brenda and Wayne purchased a house in Coppell,
Texas.  On July 19, 2006, Brenda informed Matthew that she and Wayne were
moving.

Brenda
wanted to establish Z.N.H.=s
primary residence with her in Coppell, Texas.  On July 28, 2006, Brenda
filed a petition to modify the parent-child relationship.  In the petition, she
requested that the trial court lift the Taylor County geographical restriction
in the judgment nunc pro tunc so that she could establish Z.N.H.=s primary residence outside
Taylor County.  Matthew represented himself pro se in the trial court
proceedings.  He filed a cross-petition and an amended cross-petition to modify
the parent-child relationship.  Matthew opposed Brenda=s request to modify the geographical
limitation.  In part, he requested the trial court to appoint Brenda and him as
joint managing conservators of Z.N.H. and to modify the judgment nunc pro tunc
to provide that he would have the right to establish Z.N.H.=s primary residence in
Taylor County, Texas.

On
December 19, 2006, Brenda filed a motion for substitution of counsel.  Brenda
requested the trial court to permit Charles E. Myers to represent her in this
cause.  On the same day, the trial court entered an order substituting Myers as
Brenda=s attorney of
record and discharging Brenda=s
former attorney of record.








On
January 22, 2007, Matthew filed a motion to disqualify Myers from representing
Brenda. In the motion, Matthew stated that, on July 20, 2006, he and his wife,
Dawn, had consulted with Myers Aregarding
the facts of this case.@ 
He also stated that he and Dawn had spent about thirty-five to forty minutes
with Myers and that they had shared Avery
personal information@
with him.  Matthew also stated that he had come very close to hiring Myers. 
Matthew asserted that his consultation with Myers gave rise to a conflict of
interest that disqualified Myers from representing Brenda.  Following a
hearing, the trial court denied Matthew=s
motion to disqualify Myers.

On
March 5, 2008, this cause proceeded to a four-day jury trial.  Myers
represented Brenda at trial.  The jury found in favor of Brenda on her claims
and against Matthew on his claims.  Based on the jury=s verdict, the trial court entered an order
granting the modification requested by Brenda and denying the modification
requested by Matthew.

                                                                 Issues
on Appeal

Matthew
presents seven issues for review in his brief.  In his first issue, he asserts
that the trial court abused its discretion in denying his motion to disqualify
Myers.  In his second through fifth issues, he attacks the legal and factual
sufficiency of the evidence to support the trial court=s removal of the geographical limitation provision. 
In his sixth issue, he contends that Brenda=s
counsel engaged in incurable jury argument.  In his seventh issue, he contends
that the cumulative effect of various errors in the trial court violated his
Fourteenth Amendment rights.

                                                     Matthew=s Motion to Disqualify

Matthew
and Dawn testified at the hearing on the motion to disqualify.  Matthew
testified that, on July 19, 2006, he learned that Brenda had purchased a home
in the Dallas area.  Upon learning this information, Matthew scheduled an
appointment with Myers at his office.  Dawn testified that she and Matthew
sought Myers=s advice
after they learned that Brenda had bought a house in the Dallas or Coppell
area.  Dawn said that, on July 20, 2006, she and Matthew visited with Myers for
about forty-five minutes.  During the visit, Dawn and Matthew talked with Myers
about retaining his services.  Dawn said that the purpose of the meeting with
Myers was to stop Brenda from taking Z.N.H. away.  Dawn testified that she
shared personal information with Myers about her life, Matthew=s life, Z.N.H.=s life, and Z.N.H. moving
away to Dallas.  Matthew testified that he and Dawn shared court information
and personal information with Myers.  Matthew said that he showed Myers a
letter he had written to Brenda when he learned that Wayne had taken the job in
Dallas.  Matthew also said that Myers looked at the geographical restriction
during the consultation.  Matthew testified that he talked with Myers about Aa temporary hearing for an
injunction or to enforce the current orders.@








Dawn
and Matthew testified that Myers gave them a copy of a contract for services. 
Matthew said that Myers told him a $3,500 retainer would be required for a
temporary hearing.  Dawn and Matthew said that they were going to try to come
up with the money to retain Myers.  Matthew testified that he decided he would
get back with Myers at a later date.  Ultimately, Matthew did not retain Myers.

Myers
testified that his records indicated that he met with someone by the name of AMatt Hendrix@ on July 20.  Myers said
that seeing Matthew and Dawn in court did not Ajog
[his] memory@ about
the meeting and that he did not recognize them.  He said that he did not remember
anything about the conversation that he had with Matthew and Dawn.  Myers also
testified that he would have voluntarily withdrawn from representing Brenda if
he had had any recollection of talking to Matthew or the matters that they
talked about.

At
the conclusion of the evidence, the trial court stated that Myers had Aan outstanding reputation
for completely ethical behavior.@ 
The trial court announced its ruling:

And
based on [Myers=s]
representations to the Court and to you, Mr. Hendrix, he really has no
independent recollection of any of the facts of the case, and the only specific
matters that have been mentioned are matters that are of record that he could
have found in the Court file, regardless of any discussion with you.  I=m going to deny your
motion.

 

The trial court
informed Myers that he would have an obligation to withdraw if at some point he
remembered details about his meeting with Matthew and Dawn.

We
review the trial court=s
denial of a motion to disqualify under an abuse of discretion standard.  Nat=l Med. Enters., Inc. v.
Godbey, 924 S.W.2d 123, 132 (Tex. 1996); Metro. Life Ins. Co. v.
Syntek Fin. Corp., 881 S.W.2d 319, 321 (Tex. 1994).  The test for abuse of
discretion is whether the trial court acted without reference to any guiding
rules or principles or acted in an arbitrary or unreasonable manner.  Metro.
Life Ins. Co., 881 S.W.2d at 321.

The
Texas Disciplinary Rules of Professional Conduct[2]
serve as guidelines for the courts when considering motions to disqualify.  In
re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex. 2002).  Tex. Disciplinary R. Prof=l Conduct 1.09 provides in relevant
part:

(a)
Without prior consent, a lawyer who personally has formally represented a
client in a matter shall not thereafter represent another person in a matter
adverse to the former client:

 

(3)
if it is the same or a substantially related matter.              








Rule 1.09(a)(3)
prohibited Myers from representing Brenda against Matthew if (1) Matthew was
his former client and (2) his representation of Brenda against Matthew was in
the same or a substantially related matter.

The
term Aclient@ is not defined in the
Disciplinary Rules.  Tex. R. Evid.
503(a)(1) defines Aclient@ as Aa person . . . who is rendered professional
legal services by a lawyer, or who consults a lawyer with a view to obtaining
professional legal services from that lawyer.@ 
The evidence established that Matthew consulted Myers with a view to obtaining
professional legal services from Myers.  Therefore, Matthew was Myers=s former client under the
definition set forth in Rule 503(a)(1).  The evidence also established
that Matthew consulted Meyers about a matter involving the geographical
limitation provision that required Brenda to establish Z.N.H.=s primary residence in
Taylor County, Texas.  Myers=s
representation of Brenda involved the same matter.  Rule 1.09(a)(3) prohibited
Myers from representing Brenda in this matter.     

In
denying Matthew=s
motion, the trial court relied on Myers=s
testimony that he had no recollection of his meeting with Matthew and Dawn. 
The trial court also relied on a lack of evidence that Matthew and Dawn had
disclosed to Myers any specific matters that could not be found in the court=s file.  However, once
Matthew met his evidentiary burden of showing that Myers=s representation of Brenda violated Rule
1.09(a)(3), Matthew was entitled to a conclusive presumption that he and Dawn
imparted confidences and secrets to Myers.  NCNB Tex. Nat=l Bank v. Coker, 765
S.W.2d 398, 400 (Tex. 1989); Cimarron Agric., Ltd. v. Guitar Holding Co.,
L.P., 209 S.W.3d 197, 202 (Tex. App.CEl
Paso 2006, no pet.).  As such, in making its ruling, the trial court should not
have considered Myers=s
lack of recollection of the meeting and a lack of evidence of the disclosure of
any specific matters that could not be found in the court=s file.

The
trial court abused its discretion in denying Matthew=s motion to disqualify Myers.  Matthew is
entitled to a new trial.  We sustain Matthew=s
first issue.

                                                        Sufficiency
of the Evidence

In
his second through fifth issues, Matthew challenges the legal and factual
sufficiency of the evidence to support the trial court=s removal of the geographical limitation
provision from the judgment nunc pro tunc.  Specifically, Matthew contends that
the evidence was legally and factually insufficient to establish that removing
the geographical restriction was in Z.N.H.=s
best interest.








We
review a trial court=s
order modifying conservatorship under an abuse of discretion standard.  Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Child v. Leverton,
210 S.W.3d 694, 695 (Tex. App.CEastland
2006, no pet.).  However, a jury=s
findings underlying a conservatorship decision are subject to ordinary legal
and factual sufficiency review.  Alexander v. Rogers, 247 S.W.3d 757,
761 (Tex. App.CDallas
2008, no pet.).  We must address Matthew=s
legal sufficiency issues because sustaining these challenges would result in a
rendition of judgment for him.  See Christus St. Mary Hosp. v. O=Banion, 227 S.W.3d 868,
873 (Tex. App.CBeaumont
2007, pet. denied).  Based on our ruling on Matthew=s first issue, we need not address Matthew=s factual sufficiency
issues because they are not necessary to the disposition of this appeal.  Tex. R. App. P. 47.1.

The
jury found that it was in Z.N.H.=s
best interest to lift the Taylor County geographical restriction.  In analyzing
a legal sufficiency challenge, we must determine whether the evidence at trial
would enable reasonable and fair-minded people to reach the verdict under
review.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We
must review the evidence in the light most favorable to the verdict, crediting
any favorable evidence if a reasonable factfinder could and disregarding any
contrary evidence unless a reasonable factfinder could not. Id. at
821-22, 827.  We may sustain a no-evidence or legal sufficiency challenge only
when (1) the record discloses a complete absence of evidence of a vital fact,
(2) the court is barred by rules of law or evidence from giving weight to the
only evidence offered to prove a vital fact, (3) the only evidence offered to
prove a vital fact is no more than a mere scintilla, or (4) the evidence
conclusively establishes the opposite of a vital fact.  Id. at 810
(citing Robert W. Calvert, ANo
Evidence@ and AInsufficient Evidence@ Points of Error, 38 Texas L. Rev. 361, 362-63 (1960)).








A
trial court may modify an order that provides for the terms and conditions of
conservatorship if (1) modification would be in the best interest of the child
and (2) the circumstances of the child, a conservator, or other party affected
by the order have materially and substantially changed since the date of
rendition of the order.  Tex. Fam. Code
Ann. ' 156.101(1)(A)
(Vernon 2008).  Brenda sought to modify the geographical limitation provision
in the trial court=s
February 27, 2002 judgment nunc pro tunc.  A judgment nunc pro tunc relates to
the date of the original judgment and is effective as of the earlier date.  Home
Indem. Co. v. Muncy, 449 S.W.2d 312, 315-16 (Tex. Civ. App.CTyler 1969, writ ref=d n.r.e.).  In this case,
the trial court=s
judgment nunc pro tunc was effective June 7, 2001, the date of the original
order containing the geographical limitation provision.  Under Section 156.101(1)(A),
Brenda had the burden to prove (1) that lifting the geographical limitation
provision was in Z.N.H.=s
best interest and (2) that there had been a material and substantial change in
Z.N.H.=s
circumstances, her circumstances, Matthew=s
circumstances, or the circumstances of another party affected by the order
since June 7, 2001.  Matthew does not challenge the sufficiency of the evidence
to support a finding that Brenda=s
circumstances had materially and substantially changed since June 7, 2001.

The
best interest of the child is the primary consideration of the court in
determining conservatorship and possession issues.  Tex. Fam. Code Ann. '
153.002 (Vernon 2008); Lenz v. Lenz, 79 S.W.3d 10, 14 (Tex. 2002).  The
Texas Supreme Court in Lenz considered the following factors when
addressing the best interest of the child in the context of a relocation case:
(1) the relationship with and presence of extended family; (2) the presence of
friends; (3) the presence of a stable and supportive environment; (4) the
custodial parent=s
improved financial situation and ability to provide a better standard of living
for the children; (5) positive impact on the custodial parent=s emotional and mental
state, with beneficial results to the children; (6) the noncustodial parent=s right to have regular and
meaningful contact; (7) the ability of the noncustodial parent to relocate; and
(8) the ability of the noncustodial parent to adapt his work schedule to his
children.  79 S.W.3d at 15-19.








Thirty-five
witnesses testified at trial.  Brenda testified that she was Z.N.H.=s sole managing
conservator.  At the time of trial, Z.N.H. was eleven years old.  He was in the
fifth grade at Austin Elementary School in Abilene, Texas.  Z.N.H. had lived
with Brenda since the date of her divorce from Matthew.  Brenda presented
evidence that she had provided  Z.N.H. with a stable home life.  At the time of
trial, Brenda and Z.N.H. lived with one of Brenda=s
friends at a house in Abilene.  Brenda and Wayne had purchased a house in
Coppell, Texas, so that Wayne could be close to his job with Argosy
University.  Brenda said that the house in Coppell was about three hours and
twenty minutes away from Matthew=s
house.  She also said that the Coppell house was in a very safe and beautiful
area.  The evidence showed that Z.N.H. had excelled at school and that Brenda
had been very involved in Z.N.H.=s
school activities.  The evidence also showed that Wayne had been involved in
Z.N.H=s school
activities.  Brenda believed that moving Z.N.H. with her to Coppell would be in
his best interest.  Brenda said that, if Z.N.H. were allowed to move to
Coppell, Matthew would lose his Wednesday visits with Z.N.H. and would not be
able to be around for Z.N.H.=s
games and activities. However, Brenda also presented evidence that Matthew
would receive some additional visitation periods under a standard possession
order if the court permitted Z.N.H. to move to Coppell.

Wayne
testified that he and Z.N.H. had a very close and loving relationship.  Wayne
said that he took Z.N.H.=s
best interest into consideration when he took the job with Argosy.  He said
that Brenda had continued to live in Abilene.  Wayne testified that Z.N.H. had
an excellent relationship with Brenda and that Z.N.H. would be devastated if he
had to live with Matthew.  Wayne said that he and Brenda were willing to do
whatever was necessary to insure that Z.N.H. had continued contact with
Matthew.

Brenda
presented Z.N.H.=s
school principal, current teachers, and many of his former teachers as
witnesses.  In summary, the principal and teachers provided testimony that
Z.N.H. was very intelligent, that he was in the school=s gifted and talented program,  that he was a
well-rounded child and well-liked by his classmates, that Brenda had been very
involved in his school activities, that Wayne had been involved in his school
activities, and that Brenda was a Agreat@ mom.  Z.N.H.=s principal testified that
Z.N.H. would not have any problems adapting to a school in Coppell.  Z.N.H.=s fifth grade math teacher
thought that Z.N.H. would do great wherever he attended school. 

Brenda
also called other witnesses.  Terry McQueen testified that she knew Brenda
through church.  McQueen said that Z.N.H. was sweet and very intelligent.  She
said that Brenda had a very close relationship with Z.N.H. and that Wayne had
an awesome relationship with Z.N.H.  Karen Wooliscroft testified that her son
and Z.N.H. were best friends.  She said that Brenda was very involved in Z.N.H.=s life.  She also said that
she thought Z.N.H. would do fine in Coppell.  Gwen Boyer testified that Brenda
and Wayne had a very loving and caring relationship with Z.N.H.  Carol Futter
testified that Brenda=s
relationship with Z.N.H. was A[p]robably
as ideal as you could have between a mother and a son.@  Kathleen Cloyd testified that Brenda and
Z.N.H. moved in with her in August 2006.  She said that Z.N.H. was very, very
close to Brenda.  She also said that Z.N.H. had a great relationship with
Wayne.  Cloyd testified that Z.N.H. would be devastated if he were not allowed
to move to Coppell with Brenda.








Wayne=s father, Ronald A. Smith,
testified that Brenda and Z.N.H. had an excellent relationship.  He thought
that Z.N.H. would be Aclose
to devastated@ if he
were not allowed to move to Coppell with Brenda.  Brenda=s father, Anastacio Gomez., testified that he
and Brenda had strong relationships with Z.N.H.

Matthew
testified that he lived in Tuscola, Texas.  Matthew was employed as a special
education teacher at Sweetwater Intermediate School.  Matthew said that he and
Dawn had five children, including Z.N.H.  He said that the family Areally blend[ed] together.@  He said that Z.N.H. was a
lot like him and that he wanted to do what was best for Z.N.H.  Matthew said
that his parents had moved to the area to be close to Z.N.H.  Matthew testified
that he wanted Z.N.H. to have equal time with him and Brenda.  He said that he
had been intimately involved in Z.N.H.=s
education. Matthew did not believe that Brenda and Wayne had to move to
Coppell.  Matthew testified that Brenda had made some wonderful choices for
Z.N.H. and that Brenda was a great mom but that her choice to move to Coppell
was hurting Z.N.H.

Dawn
testified that she loved Z.N.H. and that he was a part of the family.  She said
that Z.N.H. called her AEl
Mama.@  She said that
her two younger sons idolized Z.N.H.  Dawn testified that Brenda was a good
mother.  She said that Z.N.H. was devastated by the thought that he was going
to be away from Matthew, Dawn, and his siblings.  She said that Aliving three and a half
hours away from somebody [was] not a close bond.@

Matthew=s father, Eugene Hendrix,
testified that he had a close and loving relationship with Z.N.H.  Hendrix
testified that he and his wife had moved from Comanche, Texas, to Lawn, Texas,
to be closer to Matthew=s
family.  Hendrix thought that it would be good for Z.N.H. to stay in the area
so that he could continue to be a regular part of Z.N.H.=s life.  He thought that it would be
devastating to Z.N.H. if Z.N.H. moved to the Dallas area.








Matthew
called a number of other witnesses to testify about Z.N.H.=s relationships with him
and Dawn.  Susan Kathleen Nall knew Matthew and Dawn through church.  Nall said
that Z.N.H. was a great kid and a sweet kid and that Matthew and Dawn were
great parents.  Nall did not believe that Z.N.H. would have a problem adjusting
to living in Coppell.  However, she thought that it would be best for Z.N.H. if
Brenda and Matthew both continued to have homes in this area.  Nall also
testified that she was the librarian for Buffalo Gap Elementary School.  She
said that three of Matthew and Dawn=s
children attended Buffalo Gap Elementary.  She said that Dawn did volunteer
work at school at least a couple of times a week.

Charlotte
Ilene Hall also knew Matthew and his family through church.  She testified that
Matthew and Dawn were excellent parents and that they had a very successful
blended family.  Hall testified that Matthew treated Z.N.H. the same way that
he treated his other children.  She  said that Z.N.H. adored Matthew.  Hall
said that she had seen Brenda at some of Z.N.H.=s
church functions. She said that Z.N.H. and Brenda had a good relationship and
that, as far as she could tell, Z.N.H. had a good relationship with Wayne.

Matthew
presented other witnesses who knew Dawn and him through church.  David Cruddas
testified that Matthew and Dawn had been very good parents and that Z.N.H. had
always seemed to be happy.  He said that the last time he had seen Z.N.H. was about
four years ago.  Linda Scales testified that Matthew and Dawn were Avery in control@ as parents.  Scales
thought that it would be devastating to Z.N.H. if he moved away from his
siblings.  She believed that Z.N.H. needed to stay.  Jenny Halliburton
testified that Matthew and Dawn were a very loving and giving couple, loved
their kids, and had Agreat
interaction@ with
children.  Ken Cunningham testified that Matthew and Dawn were volunteers in
the church=s youth
program.  He said that Z.N.H. mixed in well with middle and high school aged
children.  Lala Fowler testified that Matthew and Dawn were a very loving
couple.  She also said that Z.N.H. was very caring and smart and that he had a Agreat bond@ with his siblings.  Fowler
believed that children should have fathers in their lives as much as possible. 
Helen Remple testified that Matthew and Dawn were loving parents who cared very
deeply for their children.

Kathy
Smartt testified that she was the principal at Sweetwater Intermediate School.  She
said that Matthew was the special education teacher at the school.  She said
that Matthew was a really good man and loved the kids at school.  She also said
that Z.N.H. was a very neat child.

Robert
Penton testified that he was a clinical social worker.  He thought that Matthew
and Dawn were good parents.  He said that Matthew wanted what was best for
Z.N.H.  Penton testified that it was good for children to be involved with both
of their parents and that Ayou
can=t spend too much
time with your son as a father.@








Janell
Young also knew Matthew and Dawn through church.  Young testified that she was
a teacher at Abilene High School.  She said that a father=s involvement makes a
difference in a child=s
behavior and that the father=s
presence is an advantage to a son who is in trouble.  Young testified that
there was Anothing
like the influence of a young man=s
dad and the love and approval of that father in the success of a young man in
our society.@

Viewing
the evidence in its entirety and considering the Lenz factors, we find
that the evidence was legally sufficient to support the jury=s finding that it was in
Z.N.H.=s best interest
to modify the judgment nunc pro tunc by lifting the geographical limitation
provision from the judgment.  While some of the Lenz factors may support
a conclusion that lifting the geographical restriction was not in Z.N.H.=s best interest, other Lenz
factors strongly support the conclusion that lifting the geographical
restriction was in his best interest.  We overrule Matthew=s second and third issues
(legal sufficiency challenges).  We need not address Matthew=s fourth through seventh
issues.  Rule 47.1.

This
Court=s Ruling

We reverse the
trial court=s order,
and we remand this cause to the trial court for a new trial and further
proceedings consistent with this opinion.

 

 

TERRY McCALL

JUSTICE

 

February 26, 2009

Panel consists of:  Wright, C.J., 

McCall, J., and Strange, J.









[1]Matthew has filed an appellate brief and a supplemental
brief.  Brenda has not
filed a brief.  Instead, she has filed a two-paragraph letter in which she
explained her position in this cause.  In the letter, Brenda indicated that she
would not be filing a further response.  





[2]See Tex. Disciplinary R. Prof=l Conduct reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, ' 9).