The **HOME INSURANCE COMPANY,**
**et al., Relators,**

v.

The **Honorable Herb MARSH, Jr., Judge**
**of the 243rd Judicial District Court of**
**El Paso County, Texas, Respondent.**

No. 08–90–00138–CV.

Court of Appeals of Texas,
El Paso.

May 2, 1990.

Richard Munzinger, Jeffrey S. Alley, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for relators.

Herbert E. Marsh, Jr., James F. Scherr, Law Offices of James Franklin Scherr, El Paso, for respondent.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

FULLER, Justice.

Relators seek mandamus relief from a March 6, 1990 order of Respondent, Judge Herb Marsh, Jr. The Judge's order disqualified their present counsel, Richard Munzinger, Jeffrey S. Alley and their law firm of Scott, Hulse, Marshall, Feuille, Finger and Thurmond, (Scott–Hulse), from further representation in the underlying suit. Writ of Mandamus is denied.

## THE UNDERLYING LAWSUIT

Six chiropractors and one chiropractic clinic, individually and on behalf of a class of all Texas chiropractors, sued twenty-two insurance companies, two independent adjusting firms, one medical review company and one Texas chiropractor. Relators are among the named party defendants. The underlying suit alleges that the defendants, acting individually and through a conspiracy, have sought to damage the chiropractic business of not only the individual plaintiffs but all other Texas chiropractors, as members of the alleged class.

The plaintiffs alleged that the defendants have wrongfully refused payment of reasonable and necessary chiropractic expenses, reduced such fees, delayed payment, unreasonably refused settlement of claims that involved future medical expenses for future treatment by chiropractors, arbitrarily refused to accept opinions of chiropractors, disparaged the quality and competency of chiropractic services to insured patients, mischaracterized such services as not being truly medical in nature, described such services as inferior to the work of other types of health care providers, and other misconduct intended to interfere with the business relationships of chiropractors with present and potential pa-

tients. The plaintiffs sought damages as well as injunctive relief.

Plaintiffs' First Amended Class Action Petition asserted that the above acts give rise to legal causes of action for civil conspiracy, slander, restraint of trade, tortious interference with business relations and contracts, breach of good faith and fair dealing duty, violations of the Workers' Compensation Act (Tex.Rev.Civ.Stat.Ann. art. 8307, sec. 7) and violation of the RICO Act (18 U.S.C. sec. 1961, et seq.).

### THE MOTION TO DISQUALIFY RELATORS' LAW FIRM

The defendants attempted to remove the underlying lawsuit to the U.S. District Court for the Western District of Texas. While the removal was pending, Relators' counsel notified counsel for the plaintiffs that the Scott–Hulse law firm (Relators' counsel) had previously represented two of the plaintiffs, Dr. LaRock and Coronado Chiropractic Clinic in two civil lawsuits:

(1) **Anderson v. Coronado Chiropractic Clinic and W.C. LaRock.**

This was a negligence/malpractice action. This case was settled resulting in a dismissal of the action by agreement in 1987.

(2) **Viramontes, et al. v. Dr. LaRock.** This case asserted acts of negligence/malpractice a battery allegation. This case was also settled resulting in a dismissal.

As to their prior representation, the Scott–Hulse law firm maintained this did not disqualify them from now representing adversaries of their former clients in the underlying lawsuit. Their contention was and is that no prior confidences were threatened with exposure by the present litigation. The plaintiffs' attorney disagreed and filed a Motion to Disqualify the Scott–Hulse law firm. Before ruling on this motion, the U.S. District Judge remanded the case back to the State District Court over which the Respondent Judge Herb Marsh presided. The Motion to Disqualify was urged before Judge Marsh who, on March 6, 1990, granted the Motion to Disqualify setting forth in his order the basis for his decision:

752

# JUDGE MARSH'S ORDER OF DISQUALIFICATION

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
243D JUDICIAL DISTRICT

FILED
EDIE : :ALCADA
DIST-... CLERK

DR. WALTER RHODES, ET AL.,

VS

NO. 88-7707   '90 MAR 8 AM 10 23

AMERICAN GENERAL, ET AL

EL PASO COUNTY, TEXAS
BY _____
DEPUTY

## ORDER REGARDING DISQUALIFICATION OF COUNSEL

After considering the briefs and authorities cited to the Court, and after considering the argument of counsel, the Court makes the following findings:

1) That an attorney-client relationship has existed between the Scott and Hulse law firm and a) one of the named plaintiffs in this suit, and b) other chiropractors by and through the representation of its current client, the National Chiropractors Insurance Company.

2) That other local and Texas chiropractors may become members of the class as plaintiffs in this suit.

3) That a substantial relationship exists between the case at bar and cases in which the Scott and Hulse firm has represented the named plaintiff and other chiropractors, in the following respect: that the issue of the reasonableness and necessity of treatment, and therefore the chiropractor's fees, will be related to the primary issue in the instant suit.

4) That through such attorney-client relationships, the firm has received access and disclosure from its chiropractor clients of information that relates to the factual issues at bar, which creates a conflict of interest and which will result in a violation of DR 4-101 and DR 5-105 of the Texas Code of Professional Responsibility.

5) The court believes, as was stated in the N.C.N.B. case (765 2d 398), that the trust necessary to any attorney-client relationship is destroyed if the client must be concerned that any information given the attorney on related issues may reappear later in an adversarial proceeding where his former attorney now represents an opponent. The court feels that the relationship between the issues in those cases creates the possibility that confidences revealed could inadvertently be divulged to present adversaries, and that the appearance of justice would therefore be compromised.

For these reasons, the motion to disqualify is hereby granted.

RENDERED March 6, 1990.

A TRUE COPY. I CERTIFY
EDIE/RUBALCABA, District Clerk
By _____
DEPUTY

HERB MARSH JR.
JUDGE

By this mandamus action, Relators seek to vacate Judge Marsh's order and obtain a denial from this Court of the Motion to Disqualify.

## TRIAL COURT EVIDENCE

### The Affidavit

■ Relators, in their trial court response to the Motion to Disqualify the Scott–Hulse law firm, complained of the lack of the filing of any affidavit or proof to support the Motion to Disqualify. The plaintiffs met such complaint by tendering an affidavit of Dr. LaRock to Judge Marsh for an *in camera* examination. The record does not depict a bad faith effort to engage in an ex parte communication to the trial judge, since the plaintiffs did send a written notice to Scott–Hulse of the submission to Judge Marsh of the *in camera* affidavit. The plaintiffs did not send a copy of the affidavit to Scott–Hulse. However, from comments made at the March 2 hearing on the disqualification motion, the affidavit apparently contains assertions by Dr. LaRock with regard to specific confidences conveyed during the prior representations by Scott–Hulse. Arguably, such prior confidences revealed are substantially related to the pending litigation. We note that in order to meet his evidentiary burden in the trial court, the movant asking for disqualification is not required to reveal specific confidences involved in the disqualifying conflict. *NCNB Texas National Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989).

We view the approach used by the plaintiffs in presenting the affidavit as an effort to present explicit evidence on the disqualification issue without voluntarily waiving the privilege which protects the confidences arising out of the prior attorney-client relationship. It is apparent from the statement of facts of the March 2 hearing that plaintiffs' counsel agreed to a presentation of the affidavit to Relators' counsel, subject to a protective order prohibiting disclosure of the contents to other counsel for Relators' codefendants. At the close of the hearing, referring to an earlier comment by Respondent, counsel for Relators asked if the court wished to retire to chambers with counsel for Relators and plaintiffs to discuss the *in camera* affidavit. Counsel for plaintiffs interjected that he was willing to bring the affiant/plaintiff, Dr. LaRock, to court for in-person examination and cross-examination on the subject matter of the affidavit. The court had another matter scheduled, but stated, "I won't rule on this until I contact both of you about that particular exhibit." The record is silent as to the final disposition of this affidavit. We do not know if it was excluded by the Respondent. After the *in camera* inspection, we do not know if it was considered by Judge Marsh. The disqualification order of March 6 makes no reference to the affidavit one way or the other.

## THE RECORD

Even without the uncertain evidentiary contribution of the affidavit, the remainder of the record presents an adequate basis for this Court to conclude that the order of March 6 was an appropriate exercise of discretion by the Respondent. The test to be applied in the case of alleged disqualification under former DR 4–101 (now Tex. Gov't Code Ann. art. 10, sec. 9, Rule 1.09 (Vernon Supp.1990) is expressed in *NCNB Texas National Bank*, 765 S.W.2d at 400:

(1) The disqualification burden is upon the movant,

(2) To establish by a preponderance of the evidence,

(3) The existence of a substantial relationship between factual matters involved in the prior representation and those involved in the present litigation,

(4) Creating a genuine threat of revelation of prior confidences,

(5) Identified by specific factual issues capable of being recited in the disqualification order.

■ The test speaks in terms of a substantial *relationship*, not substantial *identity*, of legal and factual elements between the prior representation and the pending litigation. Also, the test is met by demonstrating a genuine *threat* of disclosure, not an actual materialized disclosure. From these observations flow two addition-

al aspects of the standard for disqualification:

(1) The movant need not expose the specific confidences involved.

(2) Once the above standard is met by the movant, there exists an irrebuttable, conclusive presumption that disqualification is mandated.

The opponent may not then invite, as in this case, a credibility assessment by the trial judge of any counter-assertion that despite any genuine threat of disclosure, there are in fact no relevant confidences to breach.

■ Relators identify the "elements" of the two prior cases in which their counsel defended two of the present plaintiffs, and compare those elements to the various causes of action now asserted by these plaintiffs. Finding no similarity or substantial relationship, Relators conclude that the only confidences gained in the prior representation relate to the plaintiffs' general business practices, organization, internal procedures and philosophy. We find that comparison should be made of the issues asserted in the **"Viramontes"** and **"Anderson"** cases against the former clients and issues likely to be asserted against them in the present suit through the efforts of their former counsel. Therein lies the most likely substantial relationship and the most likely threat of breach of past confidences. *See Hoggard v. Snodgrass,* 770 S.W.2d 577 (Tex.App.—Dallas 1989, no writ).

■ In the **"Viramontes"** and **"Anderson"** cases, it was asserted that Dr. LaRock was liable for not meeting the normal standards of care for chiropractors, that he was negligent in both diagnosis and treatment and that he engaged in "over-treatment." Allegations such as these would appropriately be raised by Relators and their codefendants in response to the underlying plaintiffs' lawsuit contending that chiropractic fees were arbitrarily reduced, delayed or refused, and that chiropractor opinions were arbitrarily disregarded. The investigation necessary to prepare a defense of the malpractice allegations would involve exposure to and considera-

tion of the same confidential factual material which would fuel the defense's response to the present plaintiffs' claim brought by the former clients. Truth being a defense to the present causes of action for professional disparagement and slander, matters confidentially disclosed in preparation of the defense of the prior negligence/malpractice actions would be equally pertinent in response to those tort allegations in the underlying lawsuit. Relators have attempted to minimize the significance of the prior suits by referring simply to their dismissals. More precisely, those suits were dismissed as the result of settlement. While such a result does not equate to a finding or admission of negligence and malpractice, we may assume that there was a reasonable basis on the merits for Relators' counsel and their former clients to enter a settlement agreement. This certainly contributes to the spectre of a genuine threat of disclosure of confidences damaging to the former clients.

## CONCLUSION

The foregoing are the factual issues which create a substantial relationship between the prior representation and the pending litigation. They are so found by the Respondent in his order of March 6. A comparison to the vague interplay alleged in *NCNB Texas National Bank* and the vague phrasing of the disqualification order in that case serves to highlight the satisfaction of the requisite standard for disqualification in the present record. The present order recites reliance upon the opinion in *NCNB Texas National Bank,* and does in fact comport with that decision in both form and substance. We find no abuse of discretion by the trial court's decision in ordering disqualification. Writ denied.