CIMARRON AGRICULTURAL, LTD. and Kemp Smith, L.L.P., Appellants,

v.

GUITAR HOLDING COMPANY, L.P., Appellee.

No. 08–05–00120–CV.

Court of Appeals of Texas, El Paso.

Aug. 31, 2006.

Elizabeth G. Bloch, Brown McCarroll, L.L.P., Austin, for Appellant.

Joseph L. Hood, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

On appeal,[1] Kemp Smith L.L.P. and Cimarron Agricultural, Ltd. ("Cimarron") challenge the trial courts disqualification of Kemp Smith. Specifically, Kemp Smith

---

1. Appellant sets out five issues for our consideration. For simplicity and clarity, we will consolidate the five issues as follows: (1) Appellant's Issues One and Two as whether the trial court abused its discretion by disqualifying Kemp Smith from representing Cimarron in future cases before the Hudspeth County Underground Water Conservation District No. 1; (2) Issues Three and Four as whether the trial court lacked jurisdiction to disqualify Kemp Smith in unknown future matters; and (3) Issue Five as whether the moving party must show actual prejudice before disqualification is appropriate.

challenges the trial courts order disqualifying it from: (1) representing Cimarron in the underlying litigation; and (2) representing Cimarron in all future litigation before the Hudspeth County Underground Water Conservation District in which Guitar Holding Company, L.P. ("Guitar") is also a party. We affirm in part and vacate in part.

In 1990, the Hudspeth County Underground Water Conservation District No. 1 (the "District") adopted rules regarding the use of underground water. In 1999, Phil Guitar hired the law firm of Kemp Smith to perform some work in connection with the then current rules. In 2000, Cimarron began to acquire land situated within the jurisdiction of the District. Cimarron retained Kemp Smith in order to obtain validation permits, obtain permits for transferring water outside of the District, and generally to represent its interests before the board.

As a result of amendments to the Texas Water Code in 2001, the District was required to either amend the then current rules, or adopt new rules in their place. In 2002, the District adopted new rules regarding the use of underground water. Thereafter, Guitar filed a petition seeking: (1) a writ of mandamus ordering the District to proceed with its pending groundwater applications; (2) a temporary injunction enjoining the District from issuing permits based upon the District's new rules; and (3) a declaratory judgment that the new rules were unconstitutional. Cimarron and other landowners in the District intervened in the lawsuit. Cimarron was represented by Kemp Smith.

Guitar moved to disqualify Kemp Smith under Rule 1.09(a) of the Texas Disciplinary Rules of Professional Conduct alleging that Kemp Smiths prior representation of Guitar prevented it from representing Cimarron in the suit. A hearing was held and the trial court granted Guitars motion to disqualify Kemp Smith. After the trial court entered the order, Cimarron petitioned this Court for a writ of mandamus. This Court denied Cimarron's petition, finding no clear abuse of discretion. *See In re Cimarron Agricultural, Ltd.*, 08–03–00215–CV, 2003 WL 21125562 (Tex.App.-El Paso May 16, 2003, orig. proceeding [mand. denied] ). On November 6, 2003, Kemp Smith withdrew as attorney of record in the underlying suit but intervened seeking a rehearing and modification of the trial courts order.

After a trial on the merits, the court entered an order upholding the validity of the new rules. The trial court then held a hearing on the motion for rehearing and modification of the earlier order disqualifying Kemp Smith. After the hearing, the trial court entered an order severing the disqualification issues into a separate cause. Judgment was entered on the severed action denying Kemp Smith's request to modify the order. Cimarron and Kemp Smith timely filed notice of appeal.

### *Standard of Review*

◼ We review the trial court's denial of a motion to disqualify under an abuse of discretion standard. *See National Medical Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex.1996); *Arzate v. Hayes*, 915 S.W.2d 616, 618 (Tex.App.-El Paso 1996, writ dism'd). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial courts action. *Arzate*, 915 S.W.2d at 618–19. Instead, it is a question of whether the trial court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. *Metropolitan Life Ins. Co. v. Syntek Finance Corp.*, 881 S.W.2d 319, 321 (Tex. 1994); *Arzate*, 915 S.W.2d at 619. The

fact that a trial judge may decide a matter within his or her discretion in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Arzate,* 915 S.W.2d at 619. We may not substitute our judgment for that of the trial court. *Syntek Finance Corp.,* 881 S.W.2d at 321.

Appellee's motion to disqualify Appellant was premised on Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct. Rule 1.09 states in relevant part:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client;

(2) if the representation in reasonable probability will involve a violation of Rule 1.05 [Confidentiality of Information]; or

(3) if it is the same or a substantially related matter.

Tex.Disciplinary R.Prof'l Conduct 1.09, *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp.2006).

▇ Disqualification is a severe remedy which can result in immediate harm by depriving a party of the right to have counsel of its choice. *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990). Accordingly, in ruling on a motion to disqualify, the trial court must strictly adhere to an exacting standard to discourage use of disqualification as a dilatory trial tactic. *Id.; see also In re Meador,* 968 S.W.2d 346, 350 (Tex.1998). The movant bears the burden of proving that the attorney should be disqualified. *Spears,* 797 S.W.2d at 656.

▇ Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under the "exacting standard" required to grant a motion to disqualify. *Spears,* 797 S.W.2d at 656; *Meador,* 968 S.W.2d at 350. Rather, the movant must "provide the trial court with sufficient information so that it can engage in a painstaking analysis of the facts." *Ghidoni v. Stone Oak, Inc.,* 966 S.W.2d 573, 579 (Tex.App.-San Antonio 1998, pet. denied), *citing J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris,* 776 S.W.2d 271, 278 (Tex.App.-Dallas 1989, orig. proceeding). A movant is not required to reveal any confidences, but must "delineate with specificity the subject matter, issues and causes of action presented in [the] former representation." *Id.*

Although the Texas Disciplinary Rules of Professional Conduct do not determine whether former counsel should be disqualified in any subsequent litigation, they do provide guidelines and suggest the relevant considerations. *Godbey,* 924 S.W.2d at 132; *Henderson,* 891 S.W.2d at 254. We note that there is no absolute prohibition against an attorney representing a new client in a matter involving a former client. *See* Tex.Disciplinary R.Prof'l CONDUCT 1.09 cmt. 3. For disqualification to be appropriate based on Rule 1.09, the pending litigation must be adverse to the former client as well as substantially related to the prior representation. TEX.DISCIPLINARY R.PROF'L CONDUCT 1.09(a); 1.09(a)(3); *see also Godbey,* 924 S.W.2d at 132; *Coker,* 765 S.W.2d at 399–400; *In re Butler,* 987 S.W.2d 221, 224 n. 1 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

▇ "Adversity" is a product of the likelihood of the risk and the seriousness of its consequences. *Godbey,* 924 S.W.2d at 132. When evaluating risk, a court

need not only focus on the relationship a party bears to a pending litigation, but rather the effect former counsel's participation in that litigation may have on the interests of a former client in a substantially related matter. *See id.* at 132–33; *see also In re Roseland Oil & Gas Inc.*, 68 S.W.3d 784, 787 (Tex.App.-Eastland 2001, orig. proceeding). Even if the risk that a former client will be affected by counsel's participation in subsequent litigation is small, if the consequences to the former client are great, then disqualification is appropriate. *See Godbey*, 924 S.W.2d at 133. As stated by the Court, "[t]he chances of being struck by lightning are slight, but not slight enough, given the consequences, to risk standing under a tree in a thunderstorm." *Id.*

To show that the matters are "substantially related," a moving party must prove the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary. *Coker*, 765 S.W.2d at 400; *see also Home Insurance Company v. Marsh*, 790 S.W.2d 749, 753 (Tex.App.-El Paso 1990, orig. proceeding). The test "speaks in terms of a substantial *relationship,* not substantial *identity,* of legal and factual elements between the prior representation and the pending litigation." [Emphasis in original]. *Marsh*, 790 S.W.2d at 753. The burden of showing a "substantial relationship" between two matters requires evidence of specific similarities capable of being recited in the disqualification order. *Coker*, 765 S.W.2d at 400. If this burden can be met, the mov-

ing party is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney. *Id.*

In Issues One and Two, Appellant challenges only that portion of the order disqualifying it from all future representation of Cimarron.[2] Specifically, in Issue One, Appellant argues that the trial court abused its discretion when it disqualified Appellant from representing Cimarron in unknown future matters. The order of the trial court states in relevant part:

It is further ORDERED that Kemp Smith, LLP shall be, and hereby is, disqualified from representing Cimarron Agricultural, Ltd. in any proceeding before the Hudspeth County Underground Water Conservation District No. 1 in which Guitar Holding Company, LP is also a party. This Order shall not preclude Kemp Smith, LLP undertaking the representation of Cimarron Agricultural, Ltd. in the event prior consent to such representation is given by Guitar Holding Company, LP.

The order barred all future representation in which Guitar is a party, without an individualized determination of whether any future action would be adverse or substantially related to the representation of the former client. For this Court to find that the trial court did not abuse its discretion, we must find that all future representation by Kemp Smith would be both adverse and substantially related. *See Godbey*, 924 S.W.2d at 132. We are unable to do so based on the record before us. The appropriate test for determining disqualification is clear and each case is factually specific. Not only must a court "painstakingly review" the matter, the court must rely upon facts that are capable

---

**2.** Appellee argues that Kemp Smith does not have standing to challenge the disqualification order. However, the notice of appeal was filed jointly by Cimarron as a defendant and Kemp Smith as an intervenor. Regardless of whether Kemp Smith has standing individually, Cimarron does have standing to assert the claims raised in this appeal.

of being specifically recited in the order. *Coker,* 765 S.W.2d at 400; *Ghidoni,* 966 S.W.2d at 579. In this case, any finding sufficient to disqualify Kemp Smith from future representation would be speculative at best. Indeed, the trial court made no finding that any subsequent litigation involving the parties before the District would either be adverse or substantially related.

Assuming, *arguendo,* that all subsequent litigation involving Guitar would be substantially related to the prior representation by Appellant, we cannot say that all future representation would also be adverse. There is simply nothing in the record to support that contention. On the contrary, Appellant presents a scenario in which both parties might intervene to protest a third party permit. In such a case, the parties might actually be aligned and yet the order would still require Appellant to be disqualified.[3]

A trial court abuses its discretion in granting a motion to disqualify if no evidence is presented proving that disqualification is warranted. *In re Chonody,* 49 S.W.3d 376, 380 (Tex.App.-Fort Worth 2000, orig. proceeding). In determining that the trial court abused its discretion in disqualifying Appellant from all future representation, we express no opinion on whether Appellant would actually be disqualified in any future matter that might arise before the Hudspeth County Underground Water Conservation District. That determination would be solely within the discretion of the trial court and made upon the facts presented at the time any future motion to disqualify is made. Therefore, Issue One is sustained. Because we have sustained Issue One, we do not reach Issue Two or its related points.

 In Issue Three, Appellant attacks the trial courts order generally, arguing that "The Trial Court Erred in Disqualifying Kemp Smith because GHC Did Not Show Actual Prejudice Caused by a Rule Violation." In other words, Appellant is arguing that in addition to requiring a party to show that the pending litigation is adverse and substantially related to the prior litigation, the party seeking disqualification must also show actual prejudice.

Appellant first states that "[t]he trial court erred in making a conclusive, irrebutable presumption that disqualification is required upon a finding of a Disciplinary Rule violation." Appellant cites the trial court's conclusion of law number twenty-six which reads in part "[b]ecause there is a substantial relationship between the subject matter of Kemp Smith's past representation of the Guitar family and its current representation of Cimarron, a conclusive, irrebuttable presumption requiring disqualification arises." Appellant contends the trial court erred in granting the motion to disqualify because it relied solely on *Coker.* Appellant suggests *Coker* is no longer a correct statement of law because a party seeking disqualification must now show actual prejudice as a result of a rule violation. We disagree.

Appellant takes the position that the Texas Supreme Court decisions of *Ayres v. Canales,* 790 S.W.2d 554 (Tex.1990) and *Henderson v. Floyd,* 891 S.W.2d 252 (Tex. 1995) require a party seeking disqualification to prove actual prejudice.[4] We do

---

3. This is not to say where parties are aligned, there will never be adversity. On the contrary, adversity can exist even when the parties' interests are seemingly aligned. *See e.g. Wasserman v. Black,* 910 S.W.2d 564, 568 (Tex.App.-Waco 1995, orig. proceeding).

4. Appellant also directs our attention to *In re Nitla,* 92 S.W.3d 419, 422–23 (Tex.2002) (trial counsel reviewed privileged documents of opponent); *In re Meador,* 968 S.W.2d 346, 349 (Tex.1998)(client provided counsel with improperly obtained, privileged documents of

note that *Ayres* dealt with Rule 3.08, and Comment 10 indicates that in order to disqualify an attorney under this section, a party must prove actual prejudice. Tex.Disciplinary R.Prof'l CONDUCT 3.08, cmt. 10 (In order to prevent misuse of the rule, a trial court should require the party seeking disqualification to demonstrate actual prejudice to itself resulting from the opposing lawyers service in the dual roles of lawyer and witness); *Ayres*, 790 S.W.2d at 558. There is, however, no comparable provision in the comments to Rule 1.09.

Appellant relies on a single statement in *Henderson* that "Rule 1.09 cannot be an absolute test for disqualification of counsel ..." as indicating that a party must show actual prejudice when seeking disqualification of opposing counsel. Henderson, 891 S.W.2d at 254. We read *Henderson* as standing only for the proposition that disqualification cannot be based solely on a violation of a disciplinary rule. Rather, the Texas Rules of Professional Conduct should guide a court in making its determination of whether or not disqualification is appropriate in any given case. *Id.* at 253.

Additionally, Appellant points to *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 52 (Tex.1998) for the proposition that a party seeking to disqualify opposing counsel must demonstrate actual prejudice. Appellant relies on the statement from *EPIC* that "[t]he question remains whether Anderson's counsel should be disqualified because their representation of Anderson is prohibited by Rule 1.09." *EPIC*, 985 S.W.2d at 52. But, contrary to Appellants assertion, this case does not indicate to us that actual prejudice must be shown by a party seeking disqualification.

The Court in *EPIC* first determined whether Rule 1.09 *prohibited* the repre-

sentation. *Id.* Finding the answer in the affirmative, the Court then determined whether or not counsel should have been disqualified in light of the policy concerns embodied in Rule 1.09. *Id.* The Courts analysis is consistent with the general rule that Texas Disciplinary Rules of Professional Conduct are not controlling as standards governing motions to disqualify, but rather should be viewed by courts as guidelines that articulate considerations relevant to the merits of such motions. *Spears*, 797 S.W.2d at 656; *see also In re Skiles*, 102 S.W.3d 323, 326 (Tex.App.-Beaumont 2003, orig. proceeding)(rules do not determine whether counsel should be disqualified but rather are the starting point for an analysis).

We do not see how this two-step analysis indicates that a heightened standard is now required when disqualification is based on Rule 1.09. There is a common thread in both *Henderson* and *EPIC*, and it is simply that a court should not disqualify counsel based solely on whether a violation of the Texas Disciplinary Rules of Professional Conduct has occurred. Rather, disqualification is only appropriate after considering the policy considerations embodied in the rule in light of the facts of the case. *See EPIC*, 985 S.W.2d at 52; *COC Services, Ltd. v. CompUSA, Inc.*, No. 05-01-00865-CV, 2002 WL 1792479, at *3 (Tex.App.-Dallas Aug.6, 2002, no pet.)(not designated for publication). Despite Appellant's assertion to the contrary, there is simply nothing in either *Ayres* or *Henderson* which would indicate that a party must show actual prejudice before disqualification is appropriate. Having found that a party need not demonstrate actual prejudice when seeking a disqualifi-

opponent); and *In re Users Sys. Inc.*, 22 S.W.3d 331, 332 (Tex.1999)(lawyer met with opposing party without counsel of record

present). However, each of these cases dealt with an opposing lawyers conduct and we find them inapplicable to the case before us.

cation based on Rule 1.09(a)(3), Issue Three is overruled.

Accordingly, we affirm that portion of the trial court's order disqualifying Appellant from representing Cimarron in the underlying litigation. However, because the trial court did not determine whether future litigation would be adverse and substantially related to Appellant's representation of Cimarron, we vacate that portion of the order addressing future representation.