

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
|  | § |  |
| IN RE: | § | No. 08-19-00248-CV |
|  | § |  |
| LAUREN FENENBOCK, | § | AN ORIGINAL PROCEEDING |
|  | § |  |
| Relator. | § | IN MANDAMUS |
|  | § |  |
|  | § |  |

**O P I N I O N**

Relator Lauren Fenenbock filed a motion to correct certain factual errors in the Court's opinion and Real Party in Interest Glenna Gaddy filed a motion for rehearing in this matter. We deny both motions, withdraw our previous opinion dated March 27, 2020, and substitute the following opinion in its place.

Relator Lauren Fenenbock has filed a petition for a writ of mandamus against the Honorable Eduardo Gamboa, Judge of Probate Court No. 2 of El Paso County, Texas, asserting that Judge Gamboa abused his discretion by failing to disqualify attorney Rene Ordonez and the law firm of Blanco Ordonez Mata & Wallace, P.C., from representing Glenna Gaddy in probate proceedings in which Gaddy is, in part, seeking to have Fenenbock's interest in a family trust forfeited. Gaddy claims that a minority shareholder lawsuit Fenenbock filed in a dispute with

Gaddy's son over governance of a family-owned business triggered a broad no-contest clause contained in the family trust that resulted in Fenenbock losing her interest in the family trust. Ordonez represented Fenenbock at a company board meeting in the pre-litigation phase of the family business dispute, but he did not represent Fenenbock when she filed suit.

We conditionally grant mandamus relief.[1]

## BACKGROUND

### *The Fenenbock/Gaddy Family and the Family Business*

This mandamus action arises from a probate dispute between two branches of the Fenenbock/Gaddy Family. Bernard and Jeannette Fenenbock were the patriarch and matriarch of the Fenenbock Family. Bernard and Jeannette had two children: a son named Mark Fenenbock and a daughter named Glenna Gaddy. Mark had two daughters named Lauren and Elysa. Glenna had two sons named Lane and Weston. Glenna Gaddy is married to Philip (Peto) Gaddy. In this mandamus action, Lauren Fenenbock is the Relator and her aunt Glenna Gaddy is the Real Party in Interest. Due to the overlap in surnames and for clarity's sake, we will refer to the parties either by the full names or by their first names only.

---

[1] Because this case is fully briefed on the merits, because we have a record before us sufficient to allow us to make a decision, because time is of the essence in this matter, and because any delay in a decision from this Court would not further the interests of justice, the Court invokes Rule 2 of the Texas Rules of Appellate Procedure, suspends regular order and ordinary submission procedures and timelines, and allows for the expedited submission of this opinion and for issuance of this decision immediately following this panel's vote on the merits. *See In re Nichol*, -- S.W.3d --, No. 08-19-00234-CV, 2019 WL 4565541, at *3 (Tex.App.—El Paso Sept. 20, 2019, orig. proceeding)(publication pending).



**Figure 1:  Fenenbock/Gaddy Family Tree**

The Fenenbock Family's original business was W. Silver Recycling, Inc., with its principal place of business located in El Paso, Texas (WSR or the Texas Corporation).  In the 1990s, Bernard and Jeannette incorporated W. Silver Recycling of New Mexico, Inc. (WSRNM or the New Mexico Corporation).  Bernard, Jeannette, and their descendants—with the exception of Mark— were all shareholders in both the Texas and New Mexico Corporations.  Although Mark did not hold stock in the companies, he held a power of attorney for each of his daughters to act on their behalf.

*Creation of the Family Trust and the No-Contest Clause*

In 2008, Bernard and Jeanette executed the Bernard L. and Jeannette Fenenbock 2008 Living Trust (the Trust).  As is relevant here, Article VII provided that upon the deaths of Bernard and Jeannette, Lauren Fenenbock was to receive a specific gift of either Bernard and Jeannette's interest in a business known as the Sunland Joint Venture or $1 million if Bernard and Jeannette

3

did not own the joint venture at the time of the death of the last to survive.

The Trust contained a no-contest clause that provided for forfeiture of a legatee's interest not only in the event that a legatee challenged elements of Bernard and Jeannette's wills or the Trust, but also in the event that a legatee brought challenges related to the operation of businesses that Bernard and Jeannette founded. The clause reads as follows, with the portion of the clause germane to this mandamus action emphasized:

> The estate plan represented by the Wills of the Settlors and this revocable living trust is the result of a good deal of thought and planning on the part of the Settlors.

> Accordingly, if any legatee under the Wills of the Settlors or any beneficiary under this trust agreement or any other trust created by the Settlors during either of their lifetimes, individually or in conjunction with any other person or persons, contests in any court the validity of either of the Settlors' Wills, this trust agreement, or any other such trust or seeks to obtain an adjudication in any proceeding in any court that either this agreement, either of the Wills, or any other such trust or any of the provisions of either is void, or seeks otherwise to void, nullify or set aside this trust agreement, the Will, any other such trust or any of the provisions of either, then in such event, any bequest in that person's favor under either this agreement, the Will, or any other such trust shall be revoked and the property the subject of that gift shall pass as if that person has predeceased the Settlors prior to the execution of any such trust, without leaving surviving descendants. The provisions of this Article shall not apply to any disclaimer by any person of any benefit under either this agreement, either of the Wills or any other such trust.

> ***Additionally, during the Settlors' lifetimes, either of them may have created trusts, limited partnerships or other business entities of which either of the Settlors, one or more of their children or other individuals may have served as fiduciaries and of which any combination of one or more of their children, their descendants or other individual legatees may be beneficiaries, partners or own other legal or equitable interests therein. This provision shall revoke any testamentary gifts made by either of the Settlors' Wills or this trust agreement to any individual who attempts to impair or invalidate any of the provisions of any such arrangements or to contest any business or investment actions or decisions made or taken by either of the Settlors, one or more of their children or any other relevant fiduciary or advisor either before or after the death of either Settlor or to contest or question the professional advice rendered to either of the Settlors, their advisors or fiduciaries by any professional, either before or after the death of either Settlor, in any manner whatsoever, directly or indirectly, including, without limitation, (i) contesting the appointment of a fiduciary; (ii) threatening,***

4

*bringing or filing any lawsuits, causes of action or claims against the other beneficiaries or fiduciaries under any such arrangement, the Will of either Settlor or this trust agreement which in any way, directly or indirectly, relates to such individual's right to inherit from either Settlor; or (iii) threatening, bringing or filing any lawsuits, causes of action or claims against any fiduciaries, advisors, officers, directors, employees, agents, independent contractors or professionals who have assisted either of the Settlors and their fiduciaries and personal representatives with the business and investment affairs of either Settlor either before or after the Settlor's death or who have been employed by, acted on behalf of or rendered advice to either of the Settlors or their various business interests in connection with their business and investment affairs either before or after the death of a Settlor.*

In furtherance of the foregoing, to avoid the waste and delay of litigation, these provisions shall apply and become operative even if any litigation or contest, whether threatened or pending, is brought in good faith or with just cause. The Trustee is hereby authorized to defend this agreement and the estate plan reflected by it, the Wills of the Settlors and any other such trust and to participate in the defense of any other such trust from any contest or other attach of any nature on this trust or any of its provisions or on the Wills at the expense of this trust estate. [Emphasis added].

### Merger of Texas and New Mexico Corporations

Fenenbock states in her mandamus application that in 2009, in response to financial difficulties being experienced by the New Mexico Corporation, the shareholders of the Texas Corporation, including Lauren Fenenbock, loaned money to the New Mexico Corporation in exchange for the New Mexico Corporation executing promissory notes. The mandamus record shows Lauren held a promissory note owed by the New Mexico Corporation worth $80,000.

On October 22, 2012, Bernard Fenenbock died. At the time, Lane Gaddy was the president of both the Texas Corporation and the New Mexico Corporation. Lane proposed that the Texas and New Mexico Corporations merge. Lauren and Elysa, who both held promissory notes owed by the New Mexico Corporation, objected to the merger, arguing that the move would essentially wipe out the corporate debt owed by the New Mexico Corporation and thereby benefit Lane (who was the majority shareholder of the New Mexico Corporation) at their expense, since they were

the New Mexico Corporation's creditors.

In connection with this corporate merger dispute, Lauren and Elysa sought legal advice and assistance from attorney Stuart Schwartz. On December 19, 2012, Lauren and Elysa, through Schwartz, wrote to Mick Ginnings, counsel for the Texas Corporation, identifying various reasons why they objected to the merger and proposing that the New Mexico Corporation liquidate its assets instead (the 2012 Objection Letter).[2] Schwartz sent another letter to Ginnings on February 5, 2013, stating that Lauren and Elysa had been requesting but had not received corporate financial information they needed to evaluate the merger. Schwartz also mentioned the New Mexico Corporation was going to have a proposed informal shareholder meeting on February 21, 2013, to "discuss the demands made on WSR-NM" and identified conditions for the meeting, including that an attorney for Lauren and Elysa be present and that the promissory notes that Lauren and Elysa held be paid off.

Glenna and her husband demanded Schwartz not serve as the attorney for Lauren and Elysa. The parties acquiesced, and Schwartz withdrew and referred Lauren and Elysa to attorney Rene Ordonez. Lauren signed an engagement letter with Ordonez on February 17, 2013. The engagement letter contained the subject line "RE: Representation Related to Payment on Default Promissory Notes and Possible Corporate Governance Related to W. Silver Recycling, Inc. and W. Silver of New Mexico, Inc." Ordonez represented Lauren at the informal shareholders' meeting. The details of Ordonez's representation will be discussed later in this opinion. It is undisputed that in total, Ordonez represented Lauren in connection with the dispute for a total of approximately two weeks.

### The Merger Lawsuit

---

[2] The 2012 Objection letter was later given to Rene Ordonez when he began representing Lauren.

In May 2014, Elysa filed suit against W. Silver Recycling and Lane Gaddy in trial cause number 2014-DCV1715 in the 448th District Court of El Paso County. W. Silver, in turn, filed a third-party claim against Lauren. The lawsuit dealt generally with the merger and management issues. Ordonez did not represent Lauren in this lawsuit.[3]

Later, after the merger was completed, Elysa and Lauren filed another lawsuit in County Court at Law No. 5 (trial cause number 2017DCV0825) seeking to appoint an independent appraiser to determine the fair value of their share ownership as minority shareholders and to have the merger declared void on the basis of fraud.[4] Ordonez did not represent Lauren in this lawsuit, either.

While the lawsuit among her family members was pending, Jeannette executed an amendment to the Family Trust providing that all of the Trust's interest in W. Silver Recycling, Inc. "shall be allocated to the trust for the benefit of GLENNA GADDY and her descendants, with assets of any equivalent value being allocated to the trust for the benefit of MARK FENENBOCK and his descendants."

### The Family Trust Litigation

On November 9, 2016, Jeannette Fenenbock died. Following Jeannette's death, a dispute arose between Glenna and Mark over control of the family trust. Specifically, Mark alleged that Glenna improperly sold trust stock to her sons Lane and Weston. Mark filed suit against Glenna

---

[3] The jury ultimately rendered a verdict adverse to Elysa and Lauren in this lawsuit. Elysa and Lauren appealed, but we dismissed that appeal at Elysa and Lauren's request. *See Fenenbock v. W. Silver Recycling, Inc.*, No. 08-17-00180-CV, 2017 WL 4534332, at *1 (Tex.App.--El Paso Oct. 11, 2017, no pet.)(mem. op.); *see also Fenenbock v. W. Silver Recycling, Inc.*, No. 08-16-00308-CV, 2017 WL 1496968, at *1 (Tex.App.—El Paso Apr. 26, 2017, no pet.)(mem. op.)(dismissing an attempted interlocutory appeal from the Fenenbocks after Fenenbocks moved to "vacate" attempted interlocutory appeal following jury verdict denying the Fenenbocks' claims).

[4] The trial court rendered a judgment adverse to Lauren and Elysa in that suit. We affirmed the judgment on direct appeal. *See Fenenbock v. W. Silver Recycling, Inc.*, No. 08-19-00093-CV, 2020 WL 858635 (Tex.App.—El Paso Feb. 21, 2020, no pet. h.).

7

in El Paso County Probate Court No. 2 on May 15, 2017, asserting that he was a co-trustee and that Glenna had acted without his consent and approval. Glenna answered and filed a third-party complaint against Lauren, alleging that Lauren was a necessary party because she had a specific bequest under the terms of the Trust. On March 19, 2018, Glenna later amended her answer and added a counterclaim against Lauren, seeking a declaratory judgment that Lauren had forfeited her interest in the Trust under the Trust's no-contest clause by prosecuting the merger lawsuit. Lauren answered and argued that a good-faith exception to the no-contest clause applied.

The probate court ultimately voided the stock transfer and signed an order to that effect on February 21, 2019. Glenna filed a motion to stay the probate court's order granting the plaintiff's motion to void the stock transfer on February 26, 2019. While the motion to stay the transfer reversal order was pending in the trial court, Glenna appealed. That appeal is currently pending before this Court in Cause No. 08-19-00071-CV. This mandamus action is ancillary to the probate proceedings currently being challenged on appeal. While the appeal from the trust litigation was pending in this Court, the trial court held a hearing on the motion to stay on April 2, 2019. Ordonez entered his first appearance in the probate court on Glenna's behalf that same day.[5]

### *Lauren Moves to Disqualify Ordonez from Representing Glenna in the Trust Litigation*

Shortly after the hearing on Glenna's motion to stay, Lauren's counsel wrote to Ordonez asserting Ordonez had a conflict of interest based on his prior representation of Lauren in the merger dispute. Ordonez responded by producing a report from attorney James M. McCormack stating Ordonez did not have a conflict of interest that rose to the level of disqualifying him from serving as Glenna's counsel in the trust litigation.

Meanwhile, in connection with the trust litigation appeal, the trial court scheduled a hearing

---

[5] The trial court ultimately denied the stay.

to set a supersedeas bond for April 24, 2019. At the April 24 hearing, Lauren's counsel told the trial court that he believed Ordonez had a conflict, and the parties agreed the supersedeas hearing should not go forward until the conflict was resolved.

On May 17, 2019, Lauren filed a motion to disqualify Ordonez as Glenna's attorney.

### Disqualification Hearing

The probate court held a hearing on the motion to disqualify on August 8, 2019.

At the hearing, Ordonez testified Schwartz contacted him via email on February 12, 2013, about having represented Lauren and Elysa Fenenbock. Ordonez sent out a conflict check email to his firm stating that the firm had been asked to represent Lauren and Elysa and stated that they would be adverse to Philip and Glenna Gaddy. Ordonez further testified he did not have any independent recollection of the purpose of the representation, but his notes indicated that he had been retained to represent Lauren and Elysa at the board meeting and there was an issue with promissory notes, a merger, and possible opposition to the merger.

Ordonez testified according to his notes, he had a telephone call on February 18, likely with Mark Fenenbock. Ordonez stated he had only met Mark Fenenbock once in person, and that was on the day of the board meeting. Ordonez recalled he understood Lauren and Elysa were seeking information from the Texas Corporation, but that they were receiving pushback. His notes stated Mark wanted liquidation of the New Mexico entity because it was not profitable. Ordonez also understood Lauren and Elysa were seeking payment for certain promissory notes. Ordonez did not speak to Lauren or Elysa in the lead-up to the meeting, only with Mark, who "did all the talking." Ordonez "reached no conclusions related to anybody's good faith or bad faith." Based on his conversations with the Fenenbocks, Ordonez did not think or consider it to be unethical for him to pursue payment or assist in pursuing payment in that case. Ordonez stated his notes

9

indicated that the clients believed W. Silver wanted the sisters to sell their shares, but they did not want to sell their interest. Ordonez agreed to represent Lauren and Elysa for a $3,000 retainer. The February 14, 2013 engagement letter identified the subject matter as "Payment on Default Promissory Notes and Possible Corporate Governance Related to W. Silver Recycling, Inc., and W. Silver of New Mexico."

Ordonez further testified his notes showed on February 18, 2013, he had an "[e]xtended telephone conference with client related to issues in dispute" and his notes were generated as a result of a conversation with either Mark Fenenbock or Schwartz. Some notations in Ordonez's notes included "Value of New Mexico company," "Added value to Texas corporation," "[s]ome issues with insider dealing on sales of real property." Ordonez testified by that time in his representation, he had identified the payment of the promissory notes, the possible merger, possible insider dealing, and possibly obtaining financial information on the companies as the topics of his representation.

According to Ordonez, on February 20, 2013, his records indicated he had "multiple telephone conferences with client" and he reviewed "documents submitted by the client in preparation for [the] shareholder meeting." Ordonez understood Mark assisted his daughters in their business and financial affairs because Mark "did all the speaking, all the talking, whenever any issues came up or any discussion."

Ordonez also reviewed letters Schwartz had provided to him. He stated he understood prior to attending the board meeting that Lauren and Elysa were opposed to the merger and there was an issue regarding Lauren and Elysa obtaining certain financial information about the company. Ordonez also reviewed a letter from Glenna and Philip Gaddy objecting to Schwartz's representation of Lauren and Elysa. The Gaddys stated in the letter that no meeting of the

10

shareholders of W. Silver Recycling of New Mexico had been called; it was suggested to Lane that since everyone would be together, it was an opportunity to discuss demands; that the idea was to have an "open and informal discussion about the demands, their effect on continued operations, the current state of the companies, where this all might lead, the road ahead and such;" and Glenna and Philip objected to "preferential treatment of Lauren and Elysa over others by receiving payment in full at this time." Ordonez was aware there was statutory authority for shareholders to obtain business records of a company under certain circumstances.

Ordonez attended the board meeting on February 21, 2013. The meeting lasted approximately one hour. The day of the meeting marked the first time Ordonez met Lauren in person; Ordonez and the Fenenbocks met privately before attending the meeting. According to Ordonez's notes, he and Mark discussed the positions Lauren and her sister wanted to take at the meeting. Specifically: (1) Lauren and her sister would listen, but would not make any agreements; (2) they wanted a date certain for payment of the notes; (3) they wanted a timetable for repayment of the loan from the New Mexico Corporation; (4) they wanted an accounting; (5) they wanted certain financial information identified in a previous demand letter. There was also a notation that "Nephew caused a distribution by New Mexico company even in the face of major debt." Ordonez did not recall speaking at the meeting. When asked about minutes from the annual shareholder meeting of W. Silver Recycling held on August 8, 2013, that indicated he "made an appearance" and made comments about review of a possible non-disclosure agreement, Ordonez said he did not recall attending any such meeting and his representation ended within two days of the board meeting he attended in February. He stated it was "conceivable" the minutes from the annual meeting covered a longer period of time than just that meeting.

Ordonez also called James McCormack as an expert witness. McCormack testified he was

11

the former general counsel and chief disciplinary counsel of the State Bar of Texas. He was contacted by Ordonez to render an opinion on whether Ordonez should be disqualified from this matter. McCormack focused his attention on whether there was a substantial relationship between Ordonez's representation in the shareholder meeting in 2013 and the present litigation beginning in 2017. McCormack explained that a "superficial" relationship between actions was not enough to trigger disqualification. McCormack concluded there was not a substantial relationship between the two actions. In McCormack's view, Ordonez would have been conflicted out from the 2014 case related to the merger dispute, but since that case had been tried to verdict and a final judgment, that dispute had been "tied off" into a separate matter, and the current litigation related to the breach of fiduciary duty coupled with the counterclaim for trust disinheritance were "new claims arising out of more recent events other than what were tried in the 2014 lawsuit." McCormack also opined the movants had waived any claim for disqualification or confidentiality by introducing the attorney's file into evidence at the disqualification hearing, and he asserted the trial court could deny disqualification on that independent basis.

The trial court denied the motion to disqualify Ordonez. This mandamus action followed.

## DISCUSSION

The question in this mandamus action is whether Ordonez's prior representation of Lauren during the pre-litigation phase of merger dispute precluded him from later representing Glenna in the family trust litigation.

Lauren asserts that because Glenna invoked the corporate merger dispute as a basis to argue that Lauren forfeited her interest in the Trust under the no-contest clause, Glenna and Lauren have been cast as adversaries in the trust litigation, and the overlap between the merger dispute and the trust litigation is now direct and substantial enough to require Ordonez's disqualification from

12

representing Glenna. Glenna counters the two disputes are not substantially related, and in any event, Lauren waived any conflict by public disclosing confidences she shared with Ordonez.

We agree with Lauren. Under the circumstances, Ordonez's prior representation of Lauren is substantially related to his representation of Glenna because Glenna chose to place Lauren's conduct in the merger dispute at issue in the trust litigation, thereby creating the appearance of impropriety that confidential information Lauren imparted to Ordonez during the shareholder dispute could make its way back to Glenna in the trust litigation.

### *Standard of Review and Applicable Law*

Mandamus is an extraordinary remedy that will issue only if the lower court has clearly abused its discretion and the relator has no adequate remedy by appeal. *In re Murrin Bros. 1885, Ltd.*, --- S.W.3d ---, No. 18-0737, 2019 WL 6971663, at *2 (Tex. Dec. 20, 2019). Mandamus relief is appropriate only when the relator establishes that there was only one legally permissible outcome in the trial court. *Id*. Mandamus is meant for circumstances "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)(orig. proceeding). The inappropriate denial of a motion to disqualify is an abuse of discretion for which there is generally no adequate remedy on appeal. *In re Turner*, 542 S.W.3d 553, 555 (Tex. 2017)(orig. proceeding). As such, this mandamus action turns on whether the trial court should have granted the motion to disqualify.

"Disqualification is a severe remedy and when considering disqualifications motions, courts must adhere to an exacting standard to discourage their use as a dilatory trial tactic." [Internal quotation marks and ellipses omitted]. *In re RSR Corp.,* 568 S.W.3d 663, 666 (Tex. 2019)(orig. proceeding). The movant bears the burden of proving that the attorney should be disqualified. *Cimarron Agr., Ltd. v. Guitar Holding Co., L.P.* 209 S.W.3d 197, 201 (Tex.App.—

El Paso 2006, no pet.). "Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard." *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990)(orig. proceeding). "[L]awyers who violate the conflict-of-interest rules must be disqualified because there is an irrebuttable presumption that a lawyer obtains a client's confidential information during representation." *In re Thetford*, 574 S.W.3d 362, 373 (Tex. 2019)(orig. proceeding). "Although the attorney will not be presumed to have shared that information with his current client, the appearance of impropriety demands that the trial court disqualify counsel." [Quotation marks omitted]. *Id.*

### *Analysis*

"[A] court must consider all the facts and circumstances to determine whether the interests of justice require disqualification." *In re Murrin Bros. 1885, Ltd.*, 2019 WL 6971663, at *3. Although courts and litigants often look to the Disciplinary Rules to decide whether an attorney is disqualified, the rules do not determine whether counsel is disqualified but rather "provide helpful guidance" and "suggest the relevant considerations." *Id.*

Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct deals with conflicts of interest that arise in connection with former clients. The rule states, in relevant part: "Without prior consent, a lawyer who personally has formally represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if it is the same or a substantially related matter." TEX.DISCIPLINARY R. PROF'L CONDUCT 1.09(a)(3), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A.

It is undisputed that Lauren is adverse to Glenna in the trust litigation. *See Cimarron Agr., Ltd.*, 209 S.W.3d at 201-02 (adversity focuses on relationship party bears to pending litigation and effect former counsel's participation in that litigation may have on interests of former client in

14

substantially related matter).  Because Lauren and Glenna have been cast as adversaries in the trust litigation, we turn to the question of whether the trust litigation and the corporate merger litigation are substantially related for purposes of Rule 1.09(a)(3).

Although the phrase "substantially related" is "not defined in the Rule, it primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person."  TEX.DISCIPLINARY R. PROF'L CONDUCT 1.09 cmt. 4B. Matters are substantially related "when the similarity of the facts involves creates a genuine threat that confidences revealed to the client's former counsel will be divulged to his present adversary." [Internal quotation marks and brackets omitted].  *In re Thetford*, 574 S.W.3d at 374.  "Neither conclusory statements of similarities nor facial similarities will suffice—the movant must delineate specific facts that tie the former and current representations together."  *Id*.  Showing the existence of overlapping facts between the former representation and the current one is necessary but not sufficient to show a substantial relation; there must be a "genuine threat of disclosure."  *Id*.  "A substantial relationship may be found only after the moving party delineates with specificity the subject matter, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent."  [Internal quotation marks omitted].  *In re Murphy*, No. 14-08-01017-CV, 2009 WL 707650, at *5 (Tex.App.—Houston [14th Dist.] Mar. 5, 2009, orig. proceeding)(mem. op.).

It is clear that, on their face, these matters are related. But facial similarities are not enough to establish disqualification.  We must determine whether the relationship between these two facially-similar matters is substantial.  If so, the prior representation could preclude the current representation.

Glenna maintains that these two matters are not *substantially* related because her trust litigation claim deals solely with the filing of the *lawsuit* in the merger dispute as the trigger event for the no-contest clause, and Ordonez did not represent Lauren at the time the merger dispute went into formal litigation. Lauren maintains that Glenna's pleadings in the trust litigation deal with more than just the filing of the merger suit; Glenna's forfeiture theory is that the lawsuit triggered the no-contest clause "to the extent that the lawsuit challenged or contested business actions and decisions," which Lauren asserts requires a more searching substantive analysis beyond the question of whether a lawsuit was merely filed, one that requires an inquiry into Lauren's motivations and whether she acted in good faith.[6] Further, Lauren anticipates that Ordonez will have to be called as a witness in support of her good-faith and just cause affirmative defenses to the trust litigation, which reinforces the substantial relationship between the two actions.

We agree with Lauren. Although the trust litigation between Mark and Glenna and the corporate governance dispute between Lauren, Elysa, Lane, and others were not necessarily related matters at the time the trust litigation lawsuit was filed, Glenna made the corporate governance dispute between her son and her nieces into a centerpiece of the trust litigation by targeting Lauren as a party in the trust suit and then filing a counterclaim against Lauren asserting that she forfeited her interest in the family trust by challenging the merger in court. Had Glenna not filed a legal action attempting to disinherit her niece from the family trust, Glenna may have possibly been free to use Lauren's former attorney to defend herself against Mark in the trust litigation, depending on the circumstances. However, once Glenna made herself adverse to Lauren in the trust suit by filing a counterclaim based on Lauren's lawsuit in the merger dispute, Ordonez was precluded from

---

[6] The Texas Property Code provides a good faith exception to a forfeiture clause in a trust. *See* TEX.PROP.CODE ANN. § 112.038.

representing Glenna in a lawsuit against Lauren, his former client. The fact that Ordonez represented Lauren for only a few weeks prior to the filing of the lawsuit, that he did not represent her during the litigation phase of the dispute, and that most of his communication was with Mark and not her are not enough to save the representation here. Once a party meets the evidentiary burden of showing a representation is barred by Rule 1.09(a)(3) because the two matters are substantially related, the party is entitled to a conclusive presumption that the party imparted confidences and secrets to the attorney. *In re Z.N.H.*, 280 S.W.3d 481, 485 (Tex.App.—Eastland 2009, no pet.).

Because Lauren met her burden here, we must presume that she shared confidences with her attorney related to the subjects of the representation. This creates the appearance of a conflict of interest that would preclude Ordonez's representation of Glenna under Rule 1.09 under these circumstances.

### Prejudice

We next turn to the issue of prejudice and whether a showing of prejudice is required before mandamus relief may be granted. In their briefs, Lauren and Glenna spar over whether a movant who shows a violation of the rules must also show prejudice to prevail in a disqualification action. Lauren says no; Glenna says yes.

We previously held that a movant did not need to show actual prejudice in order to obtain disqualification. *See Cimarron Agr., Ltd.*, 209 S.W.3d at 204-05. We held that disqualification under Rule 1.09 "is only appropriate after considering the policy considerations embodied in the rule in light of the facts of the case[,]" though we also said that a showing of "actual prejudice" was not necessarily required. *Id.*

The Supreme Court, in a decision issued after the mandamus briefs were filed in this case,

17

recently provided some guidance vis-à-vis the prejudice question: "[e]ven if a violation of the disciplinary rules is established, the party requesting disqualification must also show it will suffer prejudice if disqualification is not granted." *In re Murrin Brothers 1885, Ltd.*, 2019 WL 6971663, at *3. However, *In re Murrin Brothers* clarifies that prejudice to the movant is only one dimension courts must consider. In addition to the movant's burden to show prejudice, the trial court should also consider "the extent to which the *nonmovant* will suffer prejudice from the disqualification of his or her attorney." [Emphasis added]. *Id*. Prejudice to the nonmovant may arise in the form of an increased financial burden in obtaining substitute counsel that is not already familiar with the case, the denial of a nonmovant's right to be represented by the counsel of its choice, and the use of disqualification as a dilatory tactic. *Id*.[7]

In light of the intervening decision in *In re Murrin Brothers*, we face a dilemma. Lauren has taken the position in her briefing that proof of prejudice is not required, though the intervening Texas Supreme Court decision *In re Murrin Brothers* appears to refute that position. However, while Lauren does not frame her petition in terms of prejudice, she does argue that there is a presumption of unfairness in her favor and that Ordonez's representation of Glenna is unfair to her for various reasons, and she also addresses arguments Glenna raised in the trial court and on mandamus review that Lauren cannot claim prejudice because Lauren herself revealed confidences in court filings, thereby "waiving" any disqualification claim she had. The building blocks of prejudice appear in the mandamus briefs before us, though the parties appear to call them by a different name.

We must construe briefs liberally, but reasonably, so as to avoid waiver and reach the

---

[7] We note that while *In re Murrin Brothers* contained a discussion of this standard, prejudice was not an issue raised or addressed in that case. The *In re Murrin Brothers* case turned entirely on the question of whether a group of minority shareholder and the company they were in a dispute with were adverse for purposes of the Rules.

merits of a matter before the Court whenever reasonably possible. *Salazar v. Sanders*, 440 S.W.3d 863, 872 (Tex.App.—El Paso 2013, pet. denied). Although Lauren asserts that proof of prejudice is not required, her mandamus briefs and the brief of Glenna both explore prejudice factors and fully flesh out each side's position as to whether disqualification would be fair or unfair to their respective sides. As such, the prejudice question—though not couched in those specific terms— has been presented to this Court, and we will address the prejudice issue on the merits.

*Prejudice to Lauren*

We deal first with potential prejudice to Lauren. Lauren takes the position that the presumption applies, rendering Ordonez's representation of Glenna unfair to her. Glenna advances two primary complaints addressing why Lauren is not prejudiced by the representation. First, Glenna complains that Lauren has not established prejudice because she has not identified any confidential information she imparted to Ordonez that would be threatened by his representation of Glenna. But "[t]he movant need not divulge confidences" in a disqualification proceeding so long as she delineates with specificity the overlap between the current and former representation. *In re Drake*, 195 S.W.3d 232, 236 (Tex.App.—San Antonio 2006, orig. proceeding). Lauren has done so here.

Second, Glenna contends that, as in *Thetford*, there is no risk of disclosing confidences because everything Lauren told Ordonez would have been filed in documents with the probate court and evidence introduced at trial in the merger lawsuit. "There can be no threat of disclosure of confidences that the movant has already revealed to her adversary." *In re Thetford*, 574 S.W.3d at 374 (client revealed confidences told to her attorney in the form of her will, which was a public document). However, *Thetford* is distinguishable. *Thetford* involved a probate dispute in which an attorney who drafted a will for a client later represented a family member who sought to have

the client, who began suffering from dementia, placed under a guardianship in adversarial probate proceedings. *See* 574 S.W.3d at 365-67. The Texas Supreme Court held that the attorney's prior representation of the client in drafting the will and the power of attorney *did* create the presumption that the client shared confidences with the attorney, but "whatever she may have told" the attorney "in the course of his representation of her *that is reflected in the instruments he prepared* is open knowledge" because "[s]he attached both [the will and the power of attorney] an exhibits to her pleadings in the trial court." *Id*. at 374.

Here, this case did not involve Ordonez preparing any publicly available documents that "directly reflected" the clients intent on their face, such as with a will. *Id*. Instead, Ordonez provided confidential advice and attended a board meeting with his clients. Further, the high court in *Thetford* held that will preparation and guardianship, while both "end-of-life matters," were only superficially related and did not create a genuine threat of the attorney revealing the former client's confidences to the new client because "any possible remaining confidences" would be "irrelevant to the guardianship proceeding" and specifically, the issue of whether the former client had, at that particular point in time, the capacity to make decisions for herself. *Id*. at 375 & n.31. By contrast, Glenna's counterclaim creates a direct overlap between the merger dispute and the trust dispute and place Lauren's conduct, for which she sought legal advice from Ordonez in the pre-litigation phase of the merger dispute, at issue.

We believe that Lauren has established she would be presumptively prejudiced under these circumstances.

### Prejudice to Glenna

With respect to prejudice that would be suffered by Glenna, the nonmovant, Lauren asserts that Glenna will not be prejudiced if Ordonez is disqualified because Ordonez ceased all work

20

once he received the conflict notice from Lauren, and Glenna is already represented by other attorneys, including a "local probate specialist," a "high profile probate litigator from Houston," and "an Austin attorney with one of the preeminent appellate firms in Texas." Glenna does not dispute that she has a team of other qualified lawyers representing her in this matter, nor does she explain why Ordonez in particular is necessary for her to prosecute her claims in the trust litigation.

*Balancing the Prejudice Factors*

On balance, we find that Lauren will suffer a higher likelihood of prejudice from Ordonez representing Glenna than Glenna would suffer from *not* having Ordonez represent her. We acknowledge that Ordonez's representation of Lauren was limited in time and scope. However, limitations on time and scope of representation must be counterbalanced by the risks posed by the revelation of confidential material. "Even if the risk that a former client will be affected by counsel's participation in subsequent litigation is small, if the consequences to the former client are great, then disqualification is appropriate . . . the chances of being struck by lightning are slight, but not slight enough, given the consequences, to risk standing under a tree in a thunderstorm." [Quotation marks omitted]. *Cimarron Agr., Ltd.*, 209 S.W.3d at 202. Lauren is presumptive prejudiced by Ordonez's representation of Glenna in the trust lawsuit in which Glenna seeks to have Lauren disinherited from a family trust based on Lauren's previous actions she undertook based, at least in part, on advice she presumably received from Ordonez. Glenna has not adequately rebutted this presumptive prejudice nor explained how she is prejudiced by not having Ordonez as counsel. As such, it is established that Lauren would be prejudiced by Ordonez's representation of Glenna.

**CONCLUSION**

Lauren Fenenbock has shown she is entitled to mandamus relief. We conditionally grant

21

the writ of mandamus and order the trial court to enter an order disqualifying Rene Ordonez from representing Glenna Gaddy in cause number 2017-CPR00674 arising from Probate Court No. 2 of El Paso County, Texas. The writ will issue only if the trial court does not comply within a reasonable period of time.


September 23, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.